Good morning, may it please the court. Jesse Panuccio for the Department of Justice. I'd like, if possible, to save four minutes for rebuttal. All right, watch the clock. Thank you. Both the District Court and L.A. concede in this case that the COPS Office has, quote, considerable discretion to allocate grants in a way it reasonably determines will foster community-oriented policing. To cabin that admission, however, each rely on a definition of community-oriented policing that simply does not exist in the COPS hiring program. Namely, that community-oriented policing is constant interaction with individual community members and nothing else. But it's a partnership between the community and the police on the beat, right? Well, the specific definition, and contrary to what L.A. would hold, the specific definition that the COPS Office has long used is that community-oriented policing is, quote, a philosophy that supports systematic use of partnerships to proactively address the immediate conditions that give rise to public safety issues such as crime, social disorder and fear of crime. Right, but what that means is partnership with the community, right? And what does the community mean? Thank you, Your Honor. That's not how the COPS Office defines it. It specifically says at several places partnerships can involve not just community members and community organizations, but also other government agencies, including federal agencies. If you look at ER 57, there is a specific question in the COPS application that says, have you, the question says, has the local agency, does it regularly collaborate with federal government agencies through formal partnerships such as task force, working groups, et cetera? And if you read the application, you can see it is replete throughout with asking about partnerships throughout the community. And the federal government, when we think about federal government enforcement agencies, they are part and parcel of the local law enforcement community. When did the whole idea of community policing begin? Well, the specific statutory program at issue here was enacted around, I believe, in 1994. But the concept of community-based policing and COPS on the beat existed long before that, right? Yes. And what was it always understood to mean? Well, I... In the first programs that enacted it in Kansas City and San Diego, for example. Well, I can say what the COPS office has defined it to mean specifically in the glossary of terms is what I've already read, which is the systematic use of partnerships across the community to address public safety issues and social disorder. And the COPS office has long held that those partnerships are not just about COPS on the beat talking to individual citizens. It is about a broad strategy to engage the entire community, including the organizations, including government organizations and the federal government that engage in law enforcement throughout a community. And that understanding of that difference is the key to this case. And I should note that the statute... Well, counsel, until now, has it ever been interpreted to mean partnership with federal law enforcement agencies? It has always been interpreted that way. If you look at the application, like I said, ER-57, it is a in the application that gets scored and has been scored year in and year out. Do you engage in partnerships with community organizations, with other governmental organizations, and specifically the federal government? That's at ER-57. It's also at ER-82. There's a question that asks, has the local agency consulted with other federal law enforcement agencies in developing its community-oriented policing plan? So there is nothing new here except for the fact that it is now being applied to a different issue area, a different focus area, and the city objects to that on policy grounds. And I should also note, the glossary definition, which is at ER-288, there's a specific, in the application guide, the COPS office has a specific glossary of terms in which it defines many different aspects of this program. One of the defined terms is community-oriented policing at ER-288. LA has never specifically, in its complaint, does not challenge that. They have signed every one of the seven years in which they signed an application and received funding, they accepted that definition. So for the first time in their briefs in this case, they have invented a new definition of community-oriented policing that has never before been one that the COPS office has put forward. And I should also note that the COPS office, the statute itself gives the COPS office the authority to define community-oriented policing. Not only is it an undefined term in the statute, but if you look at 10-381-D2, it says the Attorney General's technical assistance to grantees may include the development of a flexible model that will define for state and local governments definitions associated with community-oriented policing. So the COPS office has the authority to put forward that definition and it has done it unquestioned for years. Are you relying on Chevron deference? Yes, I think the agency gets deference. Are you relying on the doctrine of Chevron deference in this case? I don't think we need to in this case. So you're not relying on the doctrine of Chevron deference? You're having us interpret the words in the statute. I think the agency in a discretionary grant program is owed deference. Are you relying on the doctrine of Chevron deference or are you not for your argument today? Yes, we believe the agency is owed deference. So his question was an either-or. So you are or you are not relying? The statute does not define the term, and so under Chevron it is left to the agency to define it. So you're relying on Chevron deference for your argument today? Yes, the agency receives deference under Chevron. You didn't cite Chevron in your brief. Well, because discretionary grant programs, the statute is a grant of discretion. So what is the difference between a discretionary grant program and a formula grant program? That was in the Doar affidavit and also mentioned in the Seventh Circuit's decision in Chicago v. Sessions. What's the difference between a discretionary program and a formula grant program? In a formula grant program, typically a statute sets out a formula in which entities that are applying or entitled to the grant will be found. And is the formula specified in the statute or specified in the regulations? It could go either way, Your Honor. Sometimes there are aspects, provisions of the statute that spell out certain pieces of the formula. Sometimes it can be given to the agency to further elaborate the formula. And so what's the difference, that we have a formula in one and we don't have a – it's a hard formula? Discretionary grants typically have much broader delegations of authority. Sometimes there are only a few lines. Sometimes they only come in appropriation. They'll say something like a grant to forward public safety through principles of community-oriented policing. And then it is for the agency to develop a grant program. This happens all the time throughout the federal government, to develop a grant program, an application, a scoring system that gives out the limited pot of money. And there are always more applicants than money available, and so the agency has to have some ability to differ in the amount. And under the formula program, if you satisfy the formula, you get money? Typically, yes. Now, a formula program can have some discretion, too. It would depend on the statute. It might be a formula to a certain point and then allow for discretion. So you would have to look at the specific statutory provisions. If I may, turning to the two specific issues that are raised here in this case, there's a focus area and there's also bonus points. And both of these are consistent with the way the COPS Office has always employed scoring to differentiate among applications. Has it ever used the term illegal immigration before? I'm not sure whether it's used the specific term illegal immigration before. You're not sure? I don't believe it has, but I don't know of any COPS materials ever in the history of the program. So prior to this new form, if you had gone on the website, would you have seen anything to do with illegal immigration? You would not have seen a focus area about illegal immigration specifically. You would have seen focus areas. That was new in 2017? The illegal immigration focus area was new in 2017, yes, Your Honor. Okay. And how does illegal immigration – what factors did the Attorney General or the Office of COPS weigh in determining that illegal immigration was an appropriate focus area for community policing? Well, that's a good question, Your Honor. Thank you. The first factor to weigh is the statutory basis. The statute says at 10381b and 2, the statute is to hire officers for deployment in community-oriented policing, an undefined term which has been defined to include partnerships to address crime, social disorder, and fear of crime. Furthermore, 10382c2 says each application for a grant shall demonstrate a specific public safety need. So looking at both of those statutory commands, the COPS office has for a long time used specific focus areas that have to do with public safety or social disorder. Illegal immigration easily qualifies as that, and we know this. So I ask you what factors did the Attorney General or the Office of COPS consider when it added this to the 2017 application? Well, the factor is – No, what did they actually consider? They considered whether illegal immigration fits within that statutory definition of a public safety, social disorder issue, and we know that it does from the Supreme Court's decision in Arizona just a few years ago. The Supreme Court said at 567 U.S. 397 and 398, it noted the epidemic of crime, safety risks, serious property damage, and environmental problems associated with the influx of illegal immigration. And it specifically said, the problems posed to the state by illegal immigration must not be underestimated. And then it went on to say later in the opinion at page 410, state and federal cooperation could include a joint task force, operational support in executing a warrant, allowing federal immigration officers to gain access to detainees, or responding to requests for information. And it said specifically, consultation between federal and state officials is an important feature of the immigration system. And this is exactly, if you look at the specific focus area of litigation. Does consultation mean partnership? I think it's pretty close that consultation is a partnership. There are elements of – synonymous elements in those two words. And the Supreme Court makes clear at page 410 that working together, that immigration is not solely a federal issue, it's not solely a state issue, that there can be partnership and consultation between them. And it said at 410, not just consultation. But we're looking at congressional intent and then the implementation of a statute evidencing that intent. I'm sorry, could you repeat that? We're not looking at what the Supreme Court says about it. I'm asking you, what factors did – were actually considered at the time? Was it, for example, ever considered that the police enforcing federal immigration laws could be – have a harmful effect with respect to community policing? That is a policy view that local jurisdictions are allowed to take. So the way this works is the focus areas are broad. But if they take it, they're at a competitive disadvantage in getting the federal funds that Congress designated for purposes of community policing. Well, it is absolutely true that the application is dynamic. So if you go down one path, you're going to go down that path and you may not get points for going down the other path. So, for example, if you choose violent crime, or let's say you choose traffic safety and not violent crime, violent crime gets a bonus in certain years, but traffic safety doesn't. So the point is – I don't think you were fully responsive to Judge Warblaw's question, and I'd like to pursue the same question, but let me ask it in a different way. Okay. Is there any record here – often agencies create a record. They will send out notice and comment. Is there any record here as to what the COPS Office considered when it decided to add illegal immigration? There is – the DOOR Declaration has been put into the record. Is there anything other than the DOOR Declaration? The application itself explains what community-oriented policing is. The application itself is sort of the final – that's the final decision by the COPS Office. Is there any – they didn't send anything out for notice and comment, right? This is not notice and comment rulemaking, and we can find no case that says a discretionary grant program has to go out for notice and comment rulemaking. Okay. I just want to get an answer to the question. So the answer to the question is we have the DOOR Declaration, we have the application itself. Other than that, we have no indication as to what people in the COPS Office were thinking at the time they added illegal immigration. We can make up all kinds of things. We can look at Arizona, we can look at Kim versus DeMoor, we can look at these things, but we don't know what they were thinking about. We have the same record for illegal immigration that we have for every other question in the over 100-page application. And the question – I don't know how you can make that assertion to us. I mean, there were prior iterations of this, and the statute has changed over time, so it can't be the exact same record. What I mean is if you look at the violent crime focus area or the traffic safety focus area, this year's application and what was put in the record in this case and the record that is this is the same for illegal immigration and for those. There's no record of what the thinking was for nonviolent crime problems and quality of life policing? So there's no record of what the COPS office was thinking when they put that focus area in? Your Honor, it's on the face of the application and the guide itself, and it simply says – remember, the purpose of this is not necessarily for the COPS office to pick a focus area and then say this is every way in which you can address it. What the COPS office does is it picks focus areas and then allows communities to come back with a plan, and it also asks a series of questions about how community-oriented policing will be applied to that. I want to ask you a question, and I want you to answer me directly. I just want to know what the government's position rests on. Which subsection of Section 1038.1b is the government relying on to include illegal immigration as a focus? Which of those authorized subsections are you relying upon? Because it's changed over time, I think, from the briefing below and the briefing to this point. Thank you, Your Honor. Jay, what are you relying on? What we're relying on and what we've always relied on, 10381b1 and 2, which says these grants are to hire officers for deployment and community-oriented policing, which is then further defined by the agency. And secondly, 10382c2, which says each application – So b1 and 2 in – b1 and 2 in 381. Okay, and – And turning to 382, subsection c2, which says each application for a grant shall demonstrate a specific public safety need. And looking at that, the COPS Office – That's it. That's what the government's position is resting upon. Both of those statutes – Okay, I just want to have it right for when I have to write something about this, okay? So it's – the first – it's 10381, 1 and 2, and 10382c2. Yes, both of those point to public safety as being part of what this grant is about. And illegal immigration is a public safety issue, as the Supreme Court has said time and again, and most recently in Arizona. I see I'm running out of time. I'd like to save some for rebuttal. You are not relying on 10381b4? The statute – the appropriate – so let me say this about b4. No, answer my question before you start elaborating. Are you – it is the government's position that the insertion of illegal immigration in 2017 was authorized under 10381b4? We do rely on that brief for this point, Your Honor, and we still rely on it. Wait. Yes, and I would say – Is it your position – I mean, you just – you just said what you relied upon, and now I'm asking you are you not – are you representing that the government is not relying upon b4? And if I may explain, Your Honor. Would you answer the question first and then you can explain? Yes. That's the way appellate arguments work, counsel. You answer the question first and then you can explain. And I'll give you extra time to explain, but I just want to know. Thank you, Your Honor. Yes, but the answer is a little more complicated. You are relying on b4. Okay. Which aspect of b4? Okay. The COPS office – the COPS grant has been funded. If you look at the annual appropriation each year, it tracks the language of b1 and b2. So the specific funding really stream comes in under b1 and b2. But to the extent that this statute reveals congressional thinking about what community-oriented policing is, the other factors, the other subsections are relevant. So you're not relying on them for your insertion of illegal immigration as a focus this year or the other two contested challenges, but you're saying that it sheds light on what Congress was thinking. It sheds light on what Congress is thinking when it thinks about the area of community-oriented policing. Yes, Your Honor, and I apologize if I was unable to get to that earlier. But Congress wants to say it's a little more nuanced. On b4, are the grants that is mentioned in b4, are those the COPS grants, or is that a separate set of grants? They are COPS grants, but the way we read the appropriation is they haven't funded that. They've specifically funded the purposes under 1 and 2. And I'll give you just an example of the appropriation. It's public law, number 113-235, for example. That's at 128 Stat 2130, 2196. And the language there says annual appropriation, and it says it provides funds specifically, quote, for the hiring and rehiring of additional career law enforcement officers. So that really tracks b1 and b2. Okay, and because 1 and 2 refers to community-oriented policing, you're just saying b4 helps inform what community-oriented policing is. But you're actually looking for a separate grant to fund b4, is that correct? And it just hasn't been authorized at this point. We haven't read the appropriations to fund all of the 23 purposes, but they shed light on what community-oriented policing is generally. I don't see others in all of those purposes that refer to grants. It's interesting that b4 is the only one that refers specifically to grants. It is interesting, Your Honor, and perhaps there's some, well, I'll just say this. If you go back to a, it says it talks about a grant program. A single grant program. Yes, it does. Yeah, okay, all right. So have you looked into the legislative history of b4? Do you understand the purpose for it? I don't have a legislative history at hand for b4. Do you know when it was enacted? I suspect it was probably enacted after 9-11, but I don't know, Your Honor. Okay. Okay. I see I'm over my time. Thank you very much. All right. You can have some time for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honor. May it please the Court. David Zients for the City of Los Angeles. I'd like to begin with a few of the questions Your Honor was asking the Department of Justice. To begin with, you discussed the definition of community-oriented policing, and I think the only thing that my friend cited was the COPS Office's definition, claiming Chevron deference for that. What you did not talk about is the full statutory text. I'm not clear on whether they're actually, do you view the government's position as relying on Chevron deference? Your Honor, I don't think I did reading the briefs. They certainly seem to indicate now that they do. I think we can get to an issue involving the Fourth Circuit's Riley decision that actually expressly held that Chevron deference does not apply when the government is conditioning grant money on the states because of the federalism issues that are at play. So if the government is now suggesting that it is entitled to Chevron deference, I think it would be inconsistent with that. But I also think the statute sheds more light than the Department of Justice acknowledges on what this grant is supposed to be about. I think it is now clear that it is B-1 and B-2 that authorizes this grant program, which is about the hiring of police officers for deployment in community-oriented policing. When Congress passed this statute in 1994, it included statutorily enacted purposes, and the first two are clearly related to B-1 and B-2, and they have to do with substantially increasing the number of law enforcement officers interacting directly with members of the community, quote, cops on the beat. And Subsection 2 of those purposes is very similar, talks about interacting with members of the community. So I think we have a very clear indication. Sorry, are you reading from B-1 and B-2? Sorry, apologies, Your Honor. This is codified in the note to 10381. It's in the actually enacted public law, the 1994 law that was passed authorizing the COPS grant, and it's Section 10002, the statutory purposes of the grant program. Your Honor, if I could talk about in particular the notice and access requirements that the Attorney General has attempted to impose on the COPS grant. So you're referring to the certification? Yes, Your Honor. So that's for bonus points, right? Exactly. I think there's two distinct issues here. One is the focus area, the illegal immigration focus area, and the other, and at least what the government says now on appeal, is what that means is you need to engage in community-oriented policing to go after this problem of illegal immigration. That is one issue. The second issue is much more divorced from the purpose of the grant, which is what the Justice Department is saying is we will give you preference unrelated to the content of your grant proposal, unrelated to your need for the grant. We will give you preference. We will give you a leg up in the competition. If you are willing to play ball with the Department of Homeland Security and agree that you will participate in illegal immigration enforcement. What in the statute prohibits the Department of Justice from doing that? Your Honor, I think there's a few very strong indications in the statute, and I would begin with — Wait. Strong indications in the statute? Those were waffle words, counsel, and they were well phrased, but — Sure. Your Honor, I — Let's be very specific as to whether in the statute prohibits this. Judge Bybee, I take the point, and I think it was perhaps more waffley than necessary. What the government, the federal government is relying on is really an implicit delegation. So there's nothing that actually authorizes the federal government to do that. What the government is saying is we've been given this pot of money. We've been directed to use it in a discretionary way for a purpose, and we need to figure out something to do with that pot of money so we have discretion. Doesn't 1010388 say that the attorney general may promulgate regulations and guidelines to carry out this subchapter? That seems like a pretty general grant of authority. Do you read it more narrowly, or how does that preclude their certification? Bonus point. Your Honor, I don't think that the attorney general has promulgated this through regulations. It has just simply been — Well, it says on guidelines. Right. I guess we haven't seen specific guidelines either. But I think even, you know, that is to administer the program. So the question becomes, you know, what really is the statutory authorization? And what I would focus the court on is Section 10381, subsection C, which concerns preferential treatment for applicants that come from a state that adopts specific federally favored policies relating to human trafficking victims. So my question about that was, most of the focus areas that are in the application package are not included in C. And so are you saying things like nonviolent crime problems and quality of life policing focus area is precluded to be given bonus points because it isn't one of the preferential areas under C? No, Your Honor. And this is where I would, again, draw the distinction between the two considerations were challenging. I view the bonus points preferential treatment for having these specific immigration policies, this notice and access, which doesn't have to do with the way you use the grant money. I think that's what we're talking about in subsection C. That's closely analogous. So the fact that Congress set out preferential treatment for human trafficking excludes other things such as illegal immigration? Your Honor, again, I think I want to put to one side in answering this question the focus areas. I think, for example, if something is within the COPS Office's general power to give the grant for, so community-oriented policing for problems of violent crime, then I think as part of administering the grant it can also say, here are the priority areas of types of problems where we think community-oriented policing can help. So I think there's a lot of discretion in the focus areas. I think the notice and access requirements are different. The notice and access requirements are things that don't have to do with? They're not requirements, right? It's bonus points. So let's get at least the terminology correct. And I heard opposing counsel saying that partnerships with federal law enforcement was part of community policing. And so they argue that the certification, which gives you bonus points for consultation, communication, and access, is part of this cooperation, which is part of community policing. At least that's the argument that they make. What makes this so different than any other focus area? Your Honor, I think the focus area in particular, the way that the government is defending it on appeal, I think has changed from what it was when the COPS Office promulgated it and how it was defended in the district court. What the focus area specifically says is not, go find a community policing strategy to solve illegal immigration. What the focus area says is you need to identify your partnership with, for example, honoring detainers. There's four specific things that the focus area wants the applicant to do. And we have not seen an expert. What the government says is, well, any program that you put forward would have to involve a community policing strategy. But they have not identified in either of their briefs, for example, on honoring detainers, what it would mean to have a community policing strategy to honor detainers. I think this may relate to the earlier question about cooperation with federal authorities. I think that has just never been understood as being at the core of what community policing is about. When Congress passed this statute, to reiterate, it talked about officers on the beat, cops on the beat, interacting directly with members of the community. But they referenced their definition of community policing as set out in the application, the glossary, as including coordination and the like. And they argue that Los Angeles agreed when they signed their application or at least didn't challenge it. Your Honor, coordination can certainly be part of a community-oriented policing strategy. For example, the federal government has relied on Section 10382C4 about coordination with other governmental and community entities. But the end of that clause is on the proposal. So what it anticipates is that, yes, to have a good community-oriented policing proposal that is about interactions with the community, improved relationships between police and the community, you also need to be coordinating that with any relevant governments. But to take the notice and access bonus points, for example, that's divorced from the proposal. What the Department of Justice is saying is you, the city of Los Angeles, you may have proposed school resource officers or you may have proposed someone to interact with at-risk youth in the community. It's not relevant to that proposal. And vacant buildings. I mean, so you're saying that the purpose of the grant is to improve relations with the community, but opposing counsel says the purpose of the grant is to use a community policing technique to address multiple different areas of crime or of not even crime, public safety, like vacant buildings. So if that's the case, I guess that they're using a community policing method, how does that foreclose coordination with the federal law enforcement? I don't think having a community-oriented policing forecloses coordination with the federal government. It may be that a particular applicant has a proposal where it would make sense to coordinate with the federal government. So it doesn't preclude coordination. No, it absolutely doesn't preclude, but I think we're talking about something very different here where, for example, the city of Los Angeles and many other cities have made a judgment, as Judge Wardlaw alluded to earlier, many communities have decided we actually think we're less safe if there is this coordination between local police and immigration. So that's a city that historically, excuse me, that is a policy decision that historically, over years and even decades in L.A.'s case, has been something that is made at the local level. And what the Attorney General is attempting to do in this grant program, it's a grant about hiring police officers for community-oriented policing, and the Attorney General is using that and saying, if you want a fair shake at that, you need to engage in immigration. So what if Los Angeles or California decided that enforcing drug laws actually made California less safe? Or if Los Angeles said, enforcing drug laws actually increases the lucrative nature of gangs, and so we're not going to enforce drug laws. Would that make the focus area on drug laws unlawful? Because then you're at a disadvantage. Your Honor, on the focus area in particular, first of all, I would distinguish the examples because historically drug law is something that states and local governments have enforced. Not in California. Now marijuana is not enforced, marijuana laws. Your Honor, let me take the marijuana example. I think that's a good one. And again, to distinguish the focus area and the notice and access. So under the Department of Justice's view, if, for example, California is not enforcing marijuana laws to the satisfaction of the federal government, what the Attorney General could say is, we think that is bad for community safety. And so if you want an equal shot at funding for community-oriented policing, even if your focus area may have nothing to do with drugs. So if they gave bonus points to jurisdictions that enforce marijuana laws, under your theory that would be unlawful. Is that correct? I think so. I think, again, there is the question of a focus area. And I think in the area of drug laws, historically the COPS Office has recognized that that is an area where community policing can have a role. But giving bonus points to jurisdictions that enforce marijuana laws would be illegal. Would be precluded. Your Honor, I think it would be. And I think the opposite would be as well. I think if an Attorney General decided, we actually think that California is right. We think California is right about its approach to marijuana laws. And we want Texas to do the same thing. So giving bonus points to enforce prostitution laws would be unlawful because there are jurisdictions that have legalized it. Is that correct, your theory? Your Honor, our. So if any jurisdiction legalizes an area. No, Your Honor, I don't think this depends on what. The grant that gives bonus points? No, Your Honor, I don't think it depends on that. I think it goes to a fundamental question of what the purpose of this statute is and the grant is. What we would submit is what Congress said. This is about the deployment of officers to engage in community-oriented policing, the hiring specifically of new police officers to go out into the community, cops on the beat, interacting directly with the community. It is something much different than that for an Attorney General to pick a policy, a particularly favored policy that he or she wants states and local governments to adopt and say, if you want this access, fair access to this pool of money for community-oriented policing, you have to do this other thing. So, Counsel, what is the basis of your argument then? Is it that it is unconstitutional or it's extra statutory, they cannot do it? Or is it that it's arbitrary and capricious, they just went too far? There's lots of discretion, but the Attorney General has just gone too far in this case. I know you've argued both. Yes. Which one do you want to stand on or start with first? I'll start with the argument that this is ultra-virus. This is beyond the statutory authority. Okay. And that's where you started, and a minute ago you told me you were going to tell me what prohibited the Attorney General from doing what he's done here. Yes. So let's go back and tell me where in the statute, what makes this ultra-virus? Okay. What makes this ultra-virus is that all you have... And I would really like chapter and verse. Sure. I think you look at what is authorized. What is authorized? The Attorney General shall administer a grant program. It is B1 and B2, the deployment of police officers for community-oriented policing. I think it is well established that that doesn't mean that the Attorney General can do anything, can take into account any factor. So we know there is a limit, and the question is what is the limit? I think Section 10381C, the human trafficking provisions, provides a very good guide to where that limit ought to be because we know what Congress says when it intends to authorize preferential treatment for doing something not related to the grant, not a focus area. So human trafficking was not related. So if we had, if cops in the office had done this, let's say, five years ago or before Congress authorized human trafficking, you would be here today arguing that a human trafficking bonus point was ultra-virus. I think so, and I think any other view would mean that. And similar with the preference for hiring vets. That was adopted in 2017. If we had done that in 2016 and said, well, we're going to give you additional points if you're hiring our veterans, you would be here today arguing that that, too, is ultra-virus. I think that is a little different because it has a much tighter nexus to hiring. It is specifically about the hiring of officers. It doesn't have anything to do with community-oriented policing. No, Your Honor, but I think it does have something to do with the success of the program of hiring officers, and I think the Attorney General could have. So when you make the argument on the human trafficking, are you addressing only their certificate or also the focus areas? Because you've tried to be very careful in distinguishing between those two. Yes, Your Honor. I think that is the certification. The focus area has a separate issue, which is that as the Attorney General announced it and the COPS Office announced it in the grant, it was not about you need to have a community policing strategy for illegal immigration. It was we want you to honor detainers and to enter 287G agreements. That's the focus area. Okay. So what bars the focus areas? If 10381C is your best evidence for barring the certificate, what bars the focus area? That would be 10381B1 and 2 where it sets out the purposes? Right. The purpose is for deployment of police officers in community-oriented policing. And the way that the COPS Office actually promulgated that focus area, it has nothing to do with community-oriented policing. It says we want you to honor detainers. So what does the government argue in your mind? What is the community-oriented policing strategy that a police department might use in honoring detainees? Your Honor, I don't know, and I have not heard it from the federal government. And if you look at page 70 of the excerpts of record, that's where it set out what this focus area is. And immediately above that, at the top of the page, it says that the officers that you hire need to be deployed specifically to do the thing that you were saying your focus area is. So if your focus is the honoring detainer prong of the illegal immigration focus area, then what the community is supposed to be saying is we're going to hire police officers to work on honoring detainers. And I have not heard anything from the federal government in its briefs or today about what it would mean to have that community policing strategy. So that's why I don't think it's authorized by B-182. One of the other focus areas was homeland security. And I'm looking at the application form. I'm on ER-71. And one of the questions asks the applicant to be specific about your information and or intelligence problem, for example, the need for criminal intelligence capacity and engaging in information sharing, expanding utilization of fusion centers, et cetera. Is this one ultra-virus as well? No, Your Honor, I don't think so. And because it is not like the illegal immigration focus area where they are just saying go and honor detainers. I think on homeland security, the COPS Office has a very long track record of talking about ways in which increased and improved interactions with the community can help homeland security. And you need a plan to do that. Was the bonus points for catastrophic incidents adopted in the wake of Sandy Hook? Is that one ultra-virus? I don't think so, Your Honor, because it goes to the need for the grant. What we would submit, I think a fair reading of the statute, is the Attorney General has discretion to award the grant based on the need for the grant and the strength of the grant proposal, whether it is a good community-oriented policing proposal strategy that's being put forward. I think the catastrophic event condition consideration. So everything else that the COPS Office has identified here is within its statutory authority except for illegal immigration. Is that correct? Your Honor, I think certainly nothing else has been challenged, and I don't think anything else arises to the level. What makes the illegal immigration problematic in your mind? Are the specific examples or requests that it's making, i.e., that the city should hire cops to be deployed as federal agents in enforcing the immigration laws or the city should hire cops to honor detainers? I'm not sure how that would work, but is that what you're saying? I think it's their specific examples, because I'm just wondering if maybe there could be a strategy for not enforcing immigration laws necessarily but involving an approach to communities where there were large number of noncitizens living, working. Right, Your Honor. I think we have two distinct arguments on the focus area specifically. And the first one, and in our view, the dispositive one, so you don't need to go any further, is that this focus area really is about these four activities. That's what it says. You need to identify a federal partnership for 287G agreements honoring detainers, et cetera. And as you suggest, Judge Wardlaw, I'm also not sure what really that could mean. I think if you take the revisionist account of the focus area, where it's just a real community policing strategy to go after the problem of illegal immigration, I think that is a closer question. One thing it does raise is these APA issues, where, for example, as you noted, there is clear evidence that this office, the COPS office, has previously considered the problem from a community policing perspective of entangling local police with federal law enforcement. Now, I'm not saying that the APA requires the agency to respect that or to reach that conclusion, but what the APA does require is reasoned decision making. And so if you get to that level, I think at a minimum, the agency needed to consider the evidence that was contrary to the policy that it adopted. And are you aware of any record of the agency, the things it considered and the things that it didn't? Has any record been supplied in this case? Your Honor, all we have is the DOOR Declaration. What I would add to that is at page 18 of the supplemental excerpts of record, which is the announcement in particular of the notice and access consideration, where Attorney General Sessions explains what the purpose is. And he does not say that, well, this is really about community policing because community policing means partnerships. He says we want to reward jurisdictions that cooperate with federal officials and incentivize other ones to do so. So what we really see, and that is the only other record evidence of what the agency was considering and what we have there, is that this wasn't an attempt to foster community-oriented policing or adopt a community policing strategy. What it really was is we like this policy. We want states and local governments to cooperate in federal immigration with us. And so we're going to treat our friends in this area better and punish those who are not willing to do what we think they should do. All right. Thank you, counsel. I'll give you a couple minutes to respond, particularly on how one would employ community-based policing strategies in honoring detainers. Okay. Thank you for the extra time, Your Honors. I'd like to address that, and I'd like to. Would you address it then? Yes. So community-oriented policing strategies in honoring detainers. The bonus points, again, we go back to the fundamental. No, why don't you answer my question. Tell me. I'm hypothesizing. I could see some kind of strategy, community-oriented policing strategy for dealing with populations and communities where there are large groups of noncitizens living or working. I could see coming up with some kind of a strategy like that, but I don't know what strategy there is that exists that is both community-oriented and honors detainers. Again, Your Honor, it comes back to the fundamental disagreement in this case. What is it? What is it? Please name. Can you name a community-oriented policing strategy that facilitates honoring detainers? Honoring detainers is part of a partnership between local law enforcement and federal law enforcement, and the COPS Office defines community-oriented policing as including partnerships between and among law enforcement organizations. It is not just, and we fundamentally dispute the district court's definition. Okay, so you're saying it doesn't have to involve the community at all, just honoring detainers in partnership with the federal government is sufficient. I am saying that part of community-oriented policing, as defined by the COPS Office and included in application year after year after year, is evaluation of partnerships not only with community organizations, 501c3s and other local organizations, but also between and among law enforcement agencies to have a comprehensive, proactive strategy for combating public safety issues. And this is in the record. If you look at ER 57, if you look at ER 82, they ask specifically about consultation with or collaboration with the federal government, and that did not start this year. The other thing I would just say about the bonus points is that, although the city has tried, they cannot come up with a theory that explains many other features of the COPS application that are longstanding. They cannot explain catastrophic event bonus points. They cannot explain the bonus points for internal management practices at ER 22 and 67. They cannot explain the use of the veteran's hiring preference prior to the statutory authorization, which was done FY 13 through 16. That's at ER 23. They cannot explain non-discrimination provision against faith-based organizations at ER 128. They can't explain the seatbelt requirements for all employees at ER 129. They cannot explain the school-to-prison pipeline prohibition at ER 48. Right, but they don't have to explain all of that. They're only challenging the ones the government enacted in 2017. They are, and so the question I think for the court would be, and for LA, would be if this falls on the theory they espouse, is there anything left for the COPS application? They have three theories. Excuse me, Your Honor? They have three theories. There are theories about why we can't include bonus points. If we cannot include these bonus points, it is hard to see how, indeed, the entire set of questions, all of which are scored, it's about 20 pages of questions starting at ER 54, about what specific community-oriented policing strategies you use throughout your department, from internal management to partnerships to many other issues. And it's hard to see how we could differentiate if the only thing we're allowed to use is the human trafficking consideration that they identify in 103.81c. All right. Thank you, counsel. Thank you very much, Your Honor. City of Los Angeles v. Jefferson, Sessions III, will be submitted. And this court is adjourned for this session today. Thank you.
judges: Wardlaw, Bybee, Ikuta